Next case on the docket is 19-20706. Mr. Alban? Mr. Alban? Are you ready? Mr. Alban? Can you hear us? Yes, ma'am, I can. I apologize for that delay. My name is Dan Alban, representing the plaintiff appellant, Anthonia Nwaorie. This is a case of your money or your rights. Can a federal agency hold a private property ransom and demand that the property owner enter into a contract with the agency as a condition of its return despite Congress commanding by statute that the agency, quote, shall promptly release the property and that it may not take any further action to affect the civil forfeiture of the The answer is no. Specifically, Plaintiff Anthonia Nwaorie, on behalf of a putative class, challenges Customs and Border Protection's policy or practice of demanding that property owners sign a hold harmless agreement as a condition of returning their seized property even when the return of that property is required by statute. This hold harmless agreement requires property certain constitutional and statutory rights, including the right to sue or petition the government over anything related to the seizure, the right to seek attorney's fees and the right to interest, and requires property owners to assume certain legal obligations, including indemnifying the government from claims brought by third parties and agreeing to pay the government's attorney's fees if the hold harmless agreement is violated. The district court erred by dismissing on the pleadings each of plaintiffs to class claims and to individual claims. I will address these claims in turn, beginning with the class claims. Antonia challenges CBP's policy on behalf of herself and a class of similarly situated property owners harmed by this policy on two grounds. First, as ultra veras of CBP's statutory authority, and second, as imposing unconstitutional conditions on property owners. Antonia also brings two individual claims. Claim three is a claim for the return of interest on her seized property, and claim four is a procedural due process claim challenging that she has been singled out for particularly intrusive and invasive screenings every single time she flies because she has been placed on a screening list without notice or an opportunity to be heard. Now turning to the class claims, first let me address standing. The government wrongly claims that Antonia has no standing because it says she has not suffered a cognizable injury and her claims are moot. But the government's argument is foreclosed by this circuit's bright line rule on the picking off to exception to mootness which was announced in Seidman. Antonia was harmed by this hold harmless agreement policy when she was subjected to CBP's unlawful and unconstitutional demand to sign a hold harmless agreement, or HHA, before her property would be released. Her class claims are not moot, but even if her individual claim was eventually mooted, she will still retain standing as the class representative under this picking off exception to mootness, and that's because she timely filed... How is she the same as someone who did sign the HHA? Because she was subjected to the demand, Your Honor. I demand that you stand up, and then you don't. Well, how is that harming you? Well, this is conditioning a government benefit, in this case, the restoration, the release of one's seized property, on signing an agreement, entering into a contract with the government that waives your constitutional right. She didn't sign it, she got the money. My question is, even if you say she's injured by getting the demand, how is she the same as the people who got the demand and signed it, so they have actually signed it and subjected themselves to the things you think are improper? Yes, Your Honor. She hasn't, because she didn't sign it. That's true, Your Honor, but both claims, the statutory claim and the constitutional claim, depend on the demand being made of the property owner, them being put on the horns of the dilemma. And frankly, it does not matter which option they choose. It does not matter if they decide to sign the agreement or not. And the Supreme Court discussed this in Coons when it said that it does not matter whether the property owner agrees to waive their property right or agrees to accede to the government's demand. Extortionate demands run afoul of the Constitution because they impermissibly burden the right. And so in Coons at 606, the Supreme Court said regardless of whether the government ultimately succeeds in pressuring someone into forfeiting their constitutional right, the unconstitutional conditions doctrine forbids burdening the Constitution's enumerated rights. So both Antonia and a property owner who actually signed the Hold Harmless Agreement are subjected to that Supreme Court said in Coons, it does not matter which option they choose because the demand itself is what is unconstitutional. It is also ultra vires because as the clear language of the statute commands, the agency may not hang on to the property and make demands. Instead, what the statute says is that the government shall promptly release the property and may not any further action to affect the civil forfeiture of the property. But what the government does here is it says you must sign this Hold Harmless Agreement within 30 days or we will take steps to administratively forfeit your property. That is obviously a further action to affect the civil forfeiture of someone's property and directly violates Congress's command in CAFRA. It also directly violates the instructions of the Attorney General's regulations that are promulgated under that very statutory provision. The Attorney General's regulations at 28 CFR 8.13 say that upon coming aware that the seized property must be released, the agency shall promptly notify the person with a right to immediate possession of the property, informing that person to contact the property custodian within a specified period for release of the property. Neither CAFRA nor this regulation promulgated under CAFRA mention anything about a Hold Harmless Agreement, mention anything about demanding the property owners waive their rights, or mention anything permitting an agency to hold on to the property until the property owner signs the agreement. So that directly violates CAFRA and is in violation of both the APA and the plain language of CAFRA. Turning now to the unconstitutional conditions claim that we discussed a bit earlier, this case is actually very much like a property exaction case like was at issue in Koontz, but instead of a real property, this case involves the use of personal property. And the exaction in this case is actually far worse than in Koontz and the other real property exaction cases, which involve the government imposing conditions on a discretionary license or a zoning invariance that it is not required to grant. Here the government is attempting to impose conditions on a property right that has already vested by statute, directly contrary to the explicit commands of Congress. That is impermissible and it's not just an unconstitutional condition, it is one of the worst kinds of unconstitutional conditions that pits one is intolerable in Simmons v. U.S. and in Garrity v. New Jersey. The government argues that this is defensible because this is merely an issue of settlement and that the government can make settlement offers to people that include waivers of constitutional rights. And while it's true that during the course of ongoing litigation, when there is a pending dispute, the government may offer settlement agreements that agree to drop certain claims in exchange for waivers of various statutory rights or constitutional rights. What is it you're seeking in this case, other than an injunction? That is what we're seeking on the class claims, Your Honor. A declaration that this policy is both ultra-virus and violates the unconstitutional conditions doctrine and an injunction against CBP continuing to use this policy against the members of the class. What individual relief are you seeking? Yes, Your Honor. We seek two forms of individual relief. First, we seek the return of interest on the seized property. And secondly, we seek notice and an opportunity to be heard to the placement of the plaintiff, Antonia Noiri, on a screening list that targets her for additional intrusive screening every single time she travels. We are not saying she has to be removed from this list. We're saying that she is entitled to notice and an opportunity to be heard. That is a claim that focuses on the due process factors in Matthews v. Eldridge. It looks at the three-part balancing test of Matthews. First, whether the private interests are affected. Second, whether there's a risk of erroneous deprivation. And third, whether a government interest is implicated. And recently, the Eastern District of Virginia, in the El Hadi case, applied these Matthews factors to a very similar list, a terrorism screening database list that functions in much the same way that we believe the screening list applies to Antonia. And that court found that applying these Matthews factors, the current process for appealing the placement on the screening list, known as DHS-TRIP, is a black box that fails to provide adequate due process, because it does not inform the person who files an application. It does not even inform them whether their status has changed, and it doesn't inform them about the basis of their inclusion on the list. I want to ask about that. Am I right in thinking she has not been prevented from boarding a plane, flying somewhere, returning to the country, any of that stuff? She's just been put through more than she wants to be put through. That is correct, Your Honor. And that's the same as the conditions- And then, is she still within, has the statute of limitations on the potential criminal case against her run? I don't believe so, Your Honor, but there's no indication whatsoever that the government intends to pursue any- But she's still within, I mean, she committed an act that, depending on the proof of her intent, is a crime, and she could still be in a criminal case against her. I'm not aware of that, but they could still pursue a criminal case against her in an attempt to prove that she did know, based on the communication that she had at the time she was asked, about the $10,000, and said, oh, no, I don't, because it's in her suitcase instead of her purse. So, does that affect the issue of the government's ability to continue to review her as she travels around, that she's potentially a criminal defendant? It does not affect her due process right to notice and an opportunity to be heard. All of the considerations you just mentioned, Judge Haynes, would be considered at such a hearing, and it may well be that that hearing determines that, yes, she does, in fact, still belong on this screening list, but the basis of her claim now is she's never had that notified that she is on this screening list, and so that's what violates her due process rights. Let's say we had somebody, because I'm trying to understand the big picture here. Let's say we had somebody who forgot that this is their story. They had a gun in their suitcase. They forgot it was there. They come through the screening checkpoint. They find the gun. Ultimately, nobody prosecutes them because they convinced them I was confused. I used that when drove somewhere or whatever, so they're not prosecuted, but they go on this list now, and now every time they go through, their suitcases are set aside and opened up and looked through in much more detail. That, you would say, is a due process violation because they weren't notified that they're going to be on that list. In those circumstances, the person should receive notice and an opportunity to be heard. That doesn't mean a full court case. That simply means they'd be notified at the time they're put on the list and provided an opportunity to be heard. I understand why, because if somebody commits a crime just in the world and maybe isn't prosecuted and the police decide to follow them in public places, I understand they can't just walk into their private places and start searching without a warrant, but they can still be doing a lot of investigations, a lot of things to review somebody who's a criminal, and they don't have to get permission from the person or from the courts. So I'm just trying to understand, you know, there's rules about getting on planes that allow for more examination than you would just get in an ordinary place in the world. Why does this entitle you to the opportunity to be heard after you've committed, arguably, committed a crime? Well, that's what's at issue, Your Honor. Whether the person did in fact commit the crime, whether they knowingly committed that crime, none of that has ever been established, and there's been no opportunity to contest it. So even in those circumstances, you know, yes, obviously, when you board a plane, you're subjected to screening, but you're not targeted for that intrusive screening every single time. Her luggage has been destroyed twice as a result of this process, and it's that that provides her with the necessary interest under the first part of Matthews v. Eldridge, the private interest affected. Her right to travel has been affected. Her right to be free from unreasonable searches and seizures, including the destruction of her luggage, has been affected, and her right to be free from false government stigmatization has also been affected. Those are all private interests. We have your argument. You've saved time for both. Thank you, Your Honor. Thank you. Mr. Ross? Thank you, Your Honor, and may it please the court. Kason Ross for the United States. To the extent, and if the court assumes, that plaintiff has actually been injured in this case, all of her injuries are moot, and plaintiff has not identified any continuing injury that would provide her any entitlement to relief in this case. So how do you address the picking off argument for the class action? Of course, Your Honor. The Supreme Court all but invalidated that theory in Genesis Health Care. Justice Thomas's opinion for the court said that the, quote, inherently transitory exception to unnamed plaintiff's claims or moot before class certification does not apply to any, quote, picking off theory. That is, it goes to the nature of the claim itself rather than how the claim is litigated by a defendant. In this particular case, plaintiff only relies on this, quote, picking off theory, which this court in Fontenot called into substantial question. Their reliance on the Zedman opinion from the 1980s is called into substantial doubt that the validity of that opinion following Genesis Health Care, as this court explained in Fontenot, is all but invalidated and is possibly overruled. It is worth noting that the court is considering very similar arguments in its Serrano case, which was argued in February before this court. We've flagged that for the court's notice in the related cases in our brief. So, to the extent that plaintiff requests any relief here, she hasn't established any entitlement to such on her class claims. The district court properly dismissed them, and this court should affirm on that basis. On her individual claims... Let me ask you about that. So, you all have chosen thus far not to prosecute her criminally. You chose not to do the civil forfeiture or criminal forfeiture. Why should you be able to continue to tear up her luggage every time she comes to the airport? So, Your Honor, as the defendant's Schofield declaration, Record on Appeal, page 239, establishes, she's not on a screening list as established by CBP. That is, the text database, which effectively is a law enforcement record of past interactions with customs agents, is not a screening list as is popularly understood in reference to the or selectivists, which, you know, are dealt with separately by TSA and are not an issue in this case. So, is it just coincidental that her luggage keeps getting torn up every time she shows up? It's difficult to say, Your Honor. For one, it's worth noting this court's decision in Molina-Cedro, which establishes that order agents and other inspection authorities at the to inspect passengers' luggage subject to suspicion. Now, of course, as Your Honor correctly noted, plaintiff here violated the customs laws in refusing to declare the amount of currency she was transporting. That is potentially a criminal violation and CBP documented it as such in its text database. And in doing so, that is effectively a log of past interactions with the agency so that in subsequent interactions with particular individuals, they're able to inform those interactions appropriately. It's similar, for example, to a police officer stopping someone on the street and issuing them a warning. That warning is documented in a law enforcement database and CBP does the same. Just as when plaintiff here sought to leave the country and violated the law, CBP documented it so that when travel internationally again, they would have some record of that interaction so that they would be able to inform their law enforcement practice appropriately. Now, it's also worth mentioning that, you know... But you all have chosen, and you have chosen not to prosecute her. And so why should she essentially be found guilty on this, whatever you want to call it, non-list diary of events when she hasn't had the opportunity to contest that? For one, Your Honor, plaintiff at no point has sought to contest that placement. You know, she impugns the DHS trip process, but as this court held in Rathjen, a plaintiff has no ability to contest administrative procedures for a due process violation if they themselves don't go through those procedures. She hasn't sought any exhaustion from the agency in any respect whatsoever. Additionally... So that's the main argument, that she needs to go through that, whether it's nice or not. And if she doesn't like it, then she would maybe have an argument. That's one response, Your Honor. Additionally, there's substantial daylight between the government's decision to prosecute or conduct a civil forfeiture proceeding versus the discretion of law enforcement agents at the border to search individuals. That is, it's not a necessary predicate for any particular screening process that there be a record that the government initiated some sort of prosecution against that individual. I might leave to, or seek to leave the country tomorrow and be subject to additional screening just by virtue of the agent's suspicion of my particular behavior at that time. It wouldn't be necessary that I was prosecuted for a past interaction with the agency for the border agents to inspect me. So on that theory, then they can't tear up her suitcase when she's flying from Houston to Tulsa, but they can when she's flying from Houston to Nigeria. Not necessarily, Your Honor. It's also important, I think, in this case to distinguish that when plaintiff alleged that she was searched intensely on a domestic flight, that would not have involved CBP. Those searches would have been conducted by TSA, and TSA doesn't rely on the tax database that CBP does. So to the extent that plaintiff alleges that she was subject to intense screening on a domestic flight to Boston, that wouldn't have involved any interaction with CBP, nor would it have been, nor is very unlikely that it was based on the underlying legal violation at issue in this case. So TSA couldn't know about her $10,000 issue? My understanding is that TSA does not rely on the tax database. So they're not, they don't have the diary, as Your Honor referred to it. Of course, they could have searched her for any other number of reasons. Because this was resolved on a motion to dismiss, we don't have declarations for the agency. Right, but I mean, the TSA is under, you know, scrutiny in terms of not discriminating based on race and things like that. So they do these random things where this thing goes beep, beep, and they take you aside and all of that. And so in her case, if they actually don't know about her situation, then it would have to be a beep, beep, or something that she's doing that's strange for them to take her aside, right? Theoretically, Your Honor, it is also worth mentioning that plaintiff expressly has abandoned her equal protection and discrimination claim. Yeah, and I'm not arguing that. I'm saying that TSA can't just look at someone and say, I don't like how you look. They have to have either the beep, beep, or some other reason to ultra scrutinize you as you go. Absolutely. Absolutely, Your Honor. And in this particular case, you know, the government acknowledges that plaintiff has how any of those property and liberty interests were actually infringed. So as Your Honor correctly noted in discussion with plaintiff's counsel, she's never actually been prohibited from flying. There have been de minimis delays on several international flights. And plaintiff has also failed to identify any reputational harm to plaintiff herself, thus failing to satisfy the quote stigma plus test for purposes of a due process violation. Similarly, as I just noted, she's abandoned her equal protection and national discrimination claim. All of these go to say that the district court correctly dismissed the due process violation for failure to state a claim. I think it might also be worth. Can I just go back to the argument about the HHA document? Would you please distinguish Koonce for us? How do you see that as a different case, the Florida land case? So in this case, Your Honor, plaintiff has failed to identify any injury from failing to satisfy excuse me, failing to sign the agreement itself. She makes much noise about the fact that the agreement may have waived certain rights, but because she was never signed the agreement, she couldn't have been affected by it. And the government returned her property in short order. So they were denied certain rights, right? That's correct. That's correct. The issue in Koonce was there was some sort of land application. I don't remember all the details, but that was denied. To the extent I could recollect it as you do, Your Honor, that's correct. Here, plaintiff was not actually denied any recourse. And as I stated previously, her property was returned to her, thus mooting all of her class claims. Unless there are additional questions on the mootness of the class claims, I think it's also worth turning to her individual claim for interest. Plaintiff has identified no waiver of sovereign immunity, which is necessary for this claim of damages. The 1st, 2nd, 3rd, 8th, and 10th circuits have all cleanly held that an entitlement to interest from the government requires a clear and explicit waiver of sovereign immunity. Plaintiff simply identifies none here in her claim for interest. OK, so she makes this disgorgement with the pregnant cow that now has the calf argument. Is that how this works? I mean, when you take this money, is it put in some bucket where it can be traced how much money they made? And is that the interest she's asking for or what? I mean, how does it distinguish from the cow and the calf? You probably would have turned over the calf if y'all taken the calf. So two responses, Your Honor. First, the authority for the government to deposit the funds is in 31 U.S.C. 9705, which establishes the Treasury Forfeiture Fund. And under that statute, the government deposits money in secure accounts and invest in obligations guaranteed by the United States, usually 30 day T-bills. And to directly answer your question, the cow and the calf example is actually distinguishable from the nature of interest itself. In the cow and a calf, the calf itself is likely considered proceeds of the underlying property. The interest is legally distinguishable from proceeds. And under the government's theory, an owner of property, even after it's been seized by the government, is still entitled to the proceeds of that property subject to a forfeiture proceeding. That is, would be able to have the calf itself. Interest is completely different. So if you took my house away and you rented it out and made $1,000 off the rent, you would have to give me back the rent if you shouldn't have taken my house. That's my understanding, Your Honor. Okay. That's what you're saying is the cow calf, which is different from you take my $1,000 and now I want my interest on it. That's correct. And the courts that have adopted plaintiff's theory have instead characterized interest under any other number of names, including just compensation or earned increment or delayed compensation, all of which the Supreme Court explicitly rejected in Shaw and which plaintiff makes no effort to distinguish in this case. Indeed, the third circuit in Craig was also dealing with a federal rule of criminal procedure, 41 G claim to property. Now that rule, a title's a claimant to property, but makes no reference to interest. The third accordingly held that a party could not claim any entitlement to interest because that rule doesn't provide for any waiver of sovereign immunity. So if this court were to reject the government's argument here and reverse the district court on the score, not only would it join the minority of circuits who have effectively abrogated Supreme Court authority on this question, but it would also arguably open a circuit split on the meaning of federal rule of criminal procedure, 41. Again, plaintiff makes no effort to distinguish any of these cases, nor why the theory itself is consistent with governing Supreme Court precedent. Unless the court has any additional questions, the government rests on its brief. Thank you, counsel. Thank you, Mr. Alvin. Yes, Your Honor. I'd like to address the arguments raised by my friend in turn. First, on the Zeidman-Fontenot cases, the Fontenot case by this circuit actually clarified that after the Genesis health care decision, the picking off exception to mootness still remains valid. What the Fontenot court said was that Genesis health care does not foreclose the broader Zeidman approach to the relation back doctrine. What is clear from Genesis health care and Zeidman is that any extant exception must be extended for plaintiffs to avoid mootness in a putative class action. That's in our response at 3435, and that's from the Fontenot opinion at pages 750 to 751. Secondly, my friend says that Antonia has not been placed on a screening list, but is instead in a text database. This is just semantics. This is a word game. There is no difference between being on a screening list or being in a database that subjects you to additional screening, and there is nothing about the claim that is dependent on whether it is a list or a database. My friend also claims that the TSA doesn't use the text database, but that information is not in the record that is not reflected by the record anywhere, and it is not evidence because there has been no discovery about the text database. The TSA is a DHS agency, just as CBP is, and it may very well be possible that they do share information that comes from the text database. It may be that they do so through a different medium, through a different database, but that information is exported from the text database in ways that can be used by TSA. Either way, that's not available to the court at this time, and that's just one of the many reasons why the court should reverse and remand. What about the argument that even if it's a criming mechanism, you have to go through it before you can challenge it? Yes, Your Honor. That was the next item I was going to address. Administrative exhaustion is not required in this instance. The statute does not require administrative exhaustion. Nowhere in 49 U.S.C. 44903 or 44926 is there a requirement of administrative exhaustion, and in those circumstances, the Supreme Court has said in McCarthy v. Madigan that courts are supposed to balance the interests of the individual in retaining prompt access to a federal judicial forum against the government interests, and the definite time frame for administrative action. Well, that's true here because the DHS TRIP system provides no definite time frame for when you'll get a result. Second, when the unexhausted administrative remedy would be plainly inadequate. We know from the El Hadi opinion where there was discovery and where the court ruled for the plaintiffs on summary judgment that the DHS TRIP process is plainly inadequate. It's a black box. There's no neutral administrator. There's no process. It doesn't tell you whether you're still on the screening list or what the basis was for including you on the screening list, and finally, you're not required to go through administrative exhaustion when the claimant contends that the administrative process itself is unlawful, and that is true here. We are saying that the DHS TRIP process violates due process because there was never any notice that she was placed on the text database or whatever screening list she is on, and she's never had an opportunity, a meaningful opportunity to contest that because the DHS process, DHS TRIP process is not a meaningful opportunity to be heard as the El Hadi court found. The next thing I'd like to turn to is the question about distinguishing Kuntz and, you know, what was at issue in Kuntz? Well, in Kuntz, the Supreme Court ruled that the harm to someone who is subjected to unconstitutional conditions is being put to the test, being put on the horns of the dilemma. That's what burdens the constitutional right, and so regardless of what the person chooses, as the Kuntz court says, it violates their constitutional rights to be put to the choice between one constitutional right or another. Finally, as to the interest on property, we've not previously seen any definition from the government about what proceeds mean, but proceeds appears to have a very broad definition in legal terminology. The Blacks Law Dictionary calls it issues, produce, or money obtained from property. The West Law Dictionary says it's the yield, income, money, or anything of value produced from property. So I think proceeds would encompass interest in this case, and certainly the 6th, the 9th, and 11th circuits, as well as the Northern District of Texas, concur with that assessment. Thank you, Your Honors. Thank you, Counsel. That will conclude the arguments for today. Your case is under submission. Thank you.